UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Frances E. Grady, ) | ) | C/A No.: 7:13-cv-02020-GRA |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **ORDER** (Written Opinion) |
| Spartanburg School District Seven, Verotta Kennedy and Wanda Andrews, | ) ) ) | |
| Defendants. _____ | ) ) | |

This matter is before the Court for a review of United States Magistrate Judge Jacquelyn D. Austin's Report and Recommendation made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(g) DSC, and filed on November 25, 2013. On July 23, 2013, Plaintiff Frances E. Grady brought this action against Defendants Verotta Kennedy and Wanda Andrews (the "Individual Defendants") for civil conspiracy; and against Defendant Spartanburg School District Seven (the "School District") for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), age discrimination under the Age Discrimination in Employment Act, as amended ("ADEA"), and disability discrimination and retaliation under the Americans with Disabilities Act of 1990, as amended ("ADA"). ECF No. 1. On August 14, 2013, the Individual Defendants moved to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and Defendant School District moved to dismiss Plaintiff's claims under the ADA and ADEA for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). ECF Nos. 6 & 7. The magistrate recommends denying Defendants' motions. ECF No. 25.

For the reasons stated herein this Court adopts the magistrate's Report and Recommendation in its entirety and DENIES Defendants' motions.

## Standard of Review

The magistrate makes only a recommendation to this Court. The recommendation has no presumptive weight, and responsibility for making a final determination remains with this Court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). This Court reviews *de novo* those portions of the Report and Recommendation to which specific objection is made, and reviews those portions which are not objected to—including those portions to which only "general and conclusory objections" have been made—for clear error. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. §636(b)(1).

## Background

The Court adopts the facts as set out in Magistrate Judge Austin's Report and Recommendation as no objections to these facts have been raised. ECF No. 25 at 2–4. On July 23, 2013, Plaintiff Frances E. Grady brought this action for civil conspiracy against the Individual Defendants; and for race discrimination and retaliation pursuant to Title VII, age discrimination under the ADEA, and disability discrimination and retaliation under the ADA against the School District pursuant to . ECF No. 1. On August 14, 2013, the Individual Defendants brought a motion to dismiss Plaintiff's civil conspiracy claims pursuant to Fed. R. Civ. P. 12(b)(6), and the School District brought a motion to dismiss Plaintiff's claims under the ADA and

ADEA pursuant to Fed. R. Civ. P. 12(b)(1).  ECF Nos. 6 & 7.  Plaintiff filed responses in opposition to those motions on September 3, 2013.  ECF Nos. 11 & 15.  On September 13, 2013, both the Individual Defendants and the School District filed replies in support of their motions.  ECF Nos. 17 & 18.  Subsequently, the magistrate ordered the School District to file a supplement to its memorandum in support of its motion.  ECF No. 19.  The School District complied and filed its supplement on November 4, 2013, ECF No. 20, and Plaintiff filed a reply to the School District's supplement on November 12, 2013, ECF No. 21.  In light of Plaintiff's reply, the magistrate directed Defendant School District to respond, and on November 20, 2013, Defendant School District filed its response.  ECF Nos. 23 & 24.  On November 25, 2013, Magistrate Judge Austin recommended that this Court deny both motions to dismiss.  ECF No. 25.  The Individual Defendants did not file objections.  However, the School District timely filed objections on December 12, 2013.  ECF No. 26.  Plaintiff replied to those objections on December 24, 2013.  ECF No. 27.

## Discussion

### I.   The Individual Defendants Kennedy and Andrews

The magistrate concluded that this Court should deny the Individual Defendants' Motion to Dismiss under Rule 12(b)(6).  Neither Plaintiff nor the Individual Defendants filed objections to the portion of the magistrate's Report and Recommendation discussing the Individual Defendants.  Therefore, after reviewing the entire record, and drawing all reasonable factual inferences in Plaintiff's favor, this Court agrees with the magistrate that Plaintiff's factual allegations sufficiently state a

plausible claim of civil conspiracy. Accordingly, the Court adopts the portions of the Report and Recommendation relevant to the Individual Defendants in their entirety.

## II.     Defendant Spartanburg School District Seven

The Court first reiterates that it may only consider non-conclusory objections to the Report and Recommendation that direct this Court to a specific error. Many of Defendant School District's objections appear to simply rehash its previous arguments before the magistrate. To the extent Defendant raises cognizable and specific objections to the magistrate's Report and Recommendation, they relate to her finding that the School District is not an arm of the state entitled to Eleventh Amendment immunity.[1] Specifically, Defendant School District asserts the magistrate erred in (1) "failing to afford deference to Judge Floyd's analysis in *Smith v. Sch. Dist. of Greenville County*", and (2) "finding that subjecting the school district to suit would not adversely affect the sovereign dignity of the State [of South Carolina]". ECF No. 26. Notably, Defendant School District does not dispute that the magistrate properly enunciated the Fourth Circuit's four factor test for applying the arm-of-the-state analysis—one which requires non-exclusive consideration of:

> (1) whether any judgment against the entity as defendant will be paid by the State or whether any recovery by the entity as plaintiff will inure to

---

[1] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. The Supreme Court has long interpreted the Eleventh Amendment to stand for the presupposition that federal courts shall not hear cases brought by a citizen against his own state, *Hans v. Louisiana*, 134 U.S.1 (1890), or against instrumentalities of the state considered to be an arm of the state. *Regents of Univ. of Calif. v. Doe*, 519 U.S. 425 (1997). However, immunity under the Eleventh Amendment does not extend to political subdivisions of a state such as counties or municipalities. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977).

> the benefit of the state; (2) the degree of autonomy exercised by the entity, including such circumstances as who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's concerns; (3) whether the entity is involved with state concerns as distinct from non-state concerns, including local concerns; and (4) how the entity is treated under state law, such as whether the entity's relationship with the State is sufficiently close to make the entity an arm of the State.

*S.C. Dept. of Disabilities and Special Needs v. Hoover Universal, Inc.,* 535 F.3d 300, 303 (4th Cir. 2008); *see Cash v. Granville Cnty. Bd. of Educ.*, 242 F.3d 219, 224 (4th Cir. 2001) (applying these factors in a school district context)).[2]  For the reasons discussed below, Defendant School District's objections are overruled.

### A.     The Magistrate Correctly Analyzed the *Smith* Decision

Defendant School District argues that the magistrate erred by not deferring to Judge Floyd's sovereign immunity analysis in *Smith v. School District of Greenville County*.  ECF No. 26 at 2–3.  In addition, Defendant argues Plaintiff and the magistrate failed to "identif[y] any relevant changes in South Carolina's education system or the pervasive laws and regulations governing the School District that dictate a change in its Eleventh Amendment status as determined in *Smith*."  *Id.* at 3.  Defendant is incorrect.  The magistrate correctly identified that because there are conflicting opinions from the District of South Carolina on the issue of whether the school district is an arm of the state for purposes of Eleventh Amendment immunity, the inquiry must be done on a case-by-case basis.  ECF No. 25 at 13–14 (*Compare Eldeco, Inc. v. Skanska USA Bldg., Inc.*, 447 F. Supp. 2d 521 (D.S.C. 2006), *Calef v. Budden*, 361 F. Supp. 2d 493 (D.S.C. 2005), *Smith v. Sch. Dist. of Greenville Cnty.*,

---

[2]  This Court adopts the magistrate's reference to these four factors as the "*Hoover* and *Cash* factors." ECF No. 25 at 14.

324 F. Supp. 2d 786 (D.S.C. 2004), *and Stewart v. Laurens Cnty. Sch. Dist. No. 55*, 1992 WL 12014673, at *7 (D.S.C. Oct. 2, 1992) (unpublished) (finding that school districts were arms of South Carolina (the "State") and thus immune from suit), *with Child Evangelism Fellowship of South Carolina v. Anderson Sch. Dist. 5*, 438 F. Supp. 2d 609 (D.S.C. 2006) (reversed and remanded on other grounds by *Child Evangelism Fellowship of South Carolina v. Anderson Sch. Dist. 5*, 470 F.3d 1062 (4th Cir. 2006)), *Green v. Clarendon Sch. Dist. Three*, 923 F. Supp. 829 (D.S.C. 1996), *and Adams v. Richland Sch. Dist. One*, 412 F. Supp. 647 (D.S.C. 1976) (finding that school districts were not arms of the State for purposes of Eleventh Amendment immunity)).

In making this requisite inquiry, the magistrate ordered the parties to supplement their briefs regarding the applicability of Eleventh Amendment immunity in light of the above-mentioned factors. ECF Nos. 19–24. Furthermore, the magistrate fully considered the *Smith* court's findings and conclusions. *See* ECF No. 25 at 17–19. For example, the magistrate acknowledged that the *Smith* court reviewed South Carolina's education system and laws governing school districts before finding the School District immune from suit. *Id.* at 17. In addition, the magistrate recognized that "the *Smith* court analyzed the relationship between the State and its school districts for actual control." *Id.* at 18 (quoting *Child Evangelism*, 438 F. Supp. 2d at 619). Although Defendant contends *Smith* is factually indistinguishable, this Court finds Judge Herlong's analysis in *Child Evangelism* to be highly persuasive because it addresses issues currently before the Court and applies post-*Smith* Fourth Circuit precedent. Accordingly, this Court finds Defendant's

assertion that the magistrate did not afford deference to Judge Floyd's analysis in *Smith* to be without merit.

### B. The Magistrate Correctly Concluded the Eleventh Amendment Does Not Bar Plaintiff's Claims

Defendant School District objects to the magistrate's finding that Spartanburg School District Seven is not an arm of the state shielded by the Eleventh Amendment. In *Cash v. Granville County Board of Education*, the Fourth Circuit stated that

> when the factors for resolving whether a governmental entity is an arm of the State or more like a county or municipality point in different directions, our inquiry seeks guidance in the *"twin reasons"* for the Eleventh Amendment: (1) 'the States' fears that federal courts would force them to pay their Revolutionary War debts, leading to their financial ruin, and (2) the integrity retained by each State in our federal system, including the States' sovereign immunity from suit.

242 F.3d at 223 (citing *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 39 (1994)) (emphasis added). Guided by these "twin reasons",

> the Fourth Circuit [has] . . . explained the bipartite test a court is to employ in determining if a governmental entity is an arm of the state for purposes of the Eleventh Amendment. The first part of the test is to establish whether the state treasury will be affected. . . . If, on the other hand, the state's treasury will not be affected by a judgment in the action, then . . . the Court must [proceed to the second part of the test and] decide if the relationship between the governmental entity and the state is sufficiently close to render the entity an arm of the state.

*Smith*, 324 F. Supp. 2d at 791–92. Thus, courts have historically referred to the first of the above-mentioned *Hoover* and *Cash* factors as the "state treasury" factor and the remaining three factors as the "sovereign dignity" factors. *See Cash*, 242 F.3d at 224–25; *Child Evangelism*, 438 F. Supp. 2d 609; *Smith*, 324 F. Supp. 2d at 792. However, due to "more recent Supreme Court precedent suggest[ing] that the first factor does not deserve [the] preeminence" of being considered the "most important"

factor, *U.S. ex rel. Oberg v. Kentucky Higher Educ. Student Loan Corp.*, 681 F.3d 575, 580 n.3 (4th Cir. 2012) (internal citations omitted), courts in this Circuit are trending away from a two-part inquiry and analyzing each factor separately. *See, e.g. Hoover,* 535 F.3d at 305–07; *Hutto v. South Carolina Ret. Sys.*, 899 F. Supp. 2d 457, 468–73 (D.S.C. 2012); *Thalle Const. Co., Inc. v. Spartanburg Water Sys.*, No. 7:06-1659, 2007 WL 1035001, at *1 (D.S.C. Mar. 30, 2007).

To determine whether a school district is an "arm of the State" for Eleventh Amendment purposes, the Court must examine the above-mentioned *Hoover* and *Cash* factors, and decide if a judgment would adversely affect the dignity of the State. *Hoover*, 535 F.3d at 303; *Cash*, 242 F.3d at 224. Defendant asserts "the magistrate erred in finding that subjecting the school district to suit would not adversely affect the sovereign dignity of the state." ECF No. 26 at 3. Defendant argues that by following the *Child Evangelism* analysis the magistrate incorrectly decided that "a judgment in this case would not affect state funds," and "failed to properly apply the three 'sovereign dignity' factors the court in *Smith* determined to be dispositive of the School District's Eleventh Amendment status without regard to the treasury factor." *Id.* at 3, 17. This Court finds Defendant's objections to be without merit. However, this Court will address the factors and Defendant's specific concerns.

### 1.     Impact on the State Treasury

First, without conceding that the state treasury would not be affected by a judgment in favor of Plaintiff, Defendant acknowledges that it "does not take issue with the magistrate's finding that additional discovery may be needed to resolve the 'impact on the treasury' factor." ECF No. 26 at 2. However, Defendant attempts to

persuade this Court to reject the magistrate's legal analysis and instead employ a practical analysis in determining whether a judgment in this case would have a real effect on state funds. *Id.* at 16–17. Defendant argues that under such an inquiry, the State Treasury would be implicated due to the fact that state funds are given to the School District for operation. *Id.* This Court has examined the first *Hoover* and *Cash* factor and finds the magistrate used the correct legal analysis to determine that, at this stage, the School District has failed to show an adverse impact on the State Treasury as there has been no discovery on this issue. Therefore, the Court declines to adopt Defendant's "practical analysis" approach and, for purposes of this motion, the Court is unable to reasonably consider this factor and will assume that there would be no impact on the state treasury if Plaintiff is awarded a judgment. *See* ECF No. 25 at 15–16.

As a result, to determine whether a school district is an "arm of the State" for Eleventh Amendment purposes, this Court must examine the remaining three *Hoover* and *Cash* factors and decide if a judgment would adversely affect the dignity of the State. *Hoover*, 535 F.3d at 303; *Cash*, 242 F.3d at 224. This Court finds Defendant's sovereign dignity objections to be without merit. However, in an abundance of caution, this Court will address the remaining factors and Defendant's specific concerns.

### 2. School District's Autonomy

Under the second *Hoover* and *Cash* factor, the Court must weigh "the extent of control that the state exerts over the entity or the degree of autonomy that the entity enjoys from the state." *Smith*, 324 F. Supp. 2d at 792. Providing guidance to

the district courts, the Fourth Circuit explained that this factor is to be analyzed "by considering whether the state retains a veto over the entity's actions, the origins of the entity's funding, and who appoints the entity's directors."  *Md. Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 261 (4th Cir. 2005) ("encourag[ing] district courts to analyze these three factors rather than engaging in a free-wheeling inquiry into the 'autonomy' of the state entity in question" because "[t]he Supreme Court has noted that gauging actual control can be a perilous inquiry." *Id.* at 261 n.10 (internal citations omitted)).[3]  *See Hoover*, 535 F.3d at 307 (finding that the entity "does not have significant autonomy apart from the State" because (1) "the State . . . retains ultimate veto power over the [entity's] actions", (2) "the origin of the [entity's] funds" revealed "South Carolina provides significant funding . . .", and (3) the entity's "members are all state officials"); *W. Va. Inv. Mgmt. Bd. v. Residential Accredited Loans, Inc.*, No. 2:10-cv-00461, 2010 WL 3418314, at *3 (S.D.W.V. Aug. 26, 2010) (considering the *Ellerbe Becket* factors in the degree of autonomy analysis); *Thalle Const. Co., Inc. v. Spartanburg Water Sys.*, No. 7:06-1659-HFF, 2007 WL 1035001, at *1 (D.S.C. Mar. 30, 2007) (Judge Floyd recognizing these three factors are used "[t]o determine the degree of autonomy exercised by an entity").

Defendant argues the magistrate erred in determining the School District retains significant autonomy such that the School District is not subject to exacting State control.  ECF No. 26 at 4–12.  Specifically, Defendant argues that the Magistrate Judge "improperly weigh[ed] the *Ellerbe Becket* factors in the overall analysis to the exclusion of and without properly considering many relevant state law

---

[3] Hereinafter, the "*Ellerbe Becket* factors" or "prongs of the control analysis".

provisions and other material factors bearing on the overall Eleventh Amendment analysis in this case." *Id.* at 5.  Defendant asserts that "while the control analysis may include the *Ellerbe Becket* factors, the Court may and should also look beyond those sub-factors." *Id.*  In addition, Defendant argues that "the South Carolina School Code (S.C. Code § 59-1-10 et seq.) and State Board of Education regulations (Chapter 43 of the South Carolina Code of Regulations) are replete with 'veto' powers, funding powers, and governance powers retained by the state over the School District's decisions," and thus the application of the *Ellerbe Becket* factors "do not change the *Smith* court's overall analysis and conclusion that . . . the School District an arm of the state." *Id.* at 6.  It is clear, just as the magistrate determined, that Defendant School District "relies on the court's finding in *Smith* that the State exercises pervasive control over the school districts."  ECF No. 25 at 18.  However, this Court agrees with the magistrate that the control analysis should not be examined for actual control; rather, the control analysis should focus on "the sub-factors set forth in *Ellerbe Becket.*" *Id.*  Thus, like the magistrate, this Court finds the control analysis in *Child Evangelism* to be more compelling than the control analysis in *Smith*, and will address Defendant's objections and analyze the second *Hoover* and *Cash* factor using the guidance provided by the Fourth Circuit in *Ellerbe Becket*.

As to the first prong of the control analysis, Defendant argues that the "Magistrate Judge erred in finding the School District has failed to show the state retains veto power over the School District's actions."  ECF No. 26 at 6.  Specifically, Defendant School District asserts "courts in both *Smith* and *Child Evangelism* recognized the state retains veto power over" school district decisions, such as

"requiring approval to buy or sell property and to construct or renovate school facilities." *Id.* Defendant also argues that "the state's power to suspend or reduce the distribution of state funds to the School District if certain mandates are not met" and the General Assembly's 2006 enactment of Act 388, "through which the state has further reduced the School District's financial autonomy by exempting all owner-occupied property from taxes for school operations," are further examples of the state's veto power. *Id.* Defendant School District directs this Court to the regulations cited in *Smith* and, in further support of its position, argues that the state "retains oversight of the School District's operations and affairs through state-level audits and reports," holds the School District accountable "for the performance of its schools," and "retains the ultimate veto power in its ability to take from the School District the complete fiscal and managerial control of any schools that do not meet the mandates of the Education Accountability Act." *Id.* In addition, Defendant argues the School District's "limited features of independence" under S.C. Code Ann. § 59-17-10, which allows the School District to sue and be sued, make contracts, own property, carry liability insurance, and retain private counsel, "do not overcome the pervasive and exacting state control found in *Smith*" and, thus, do not support the magistrate's conclusion that "the School District is an autonomous entity." ECF No. 26 at 9–10. Furthermore, Defendant asserts that the "General Assembly, through local legislation, exerts exacting control over the School District's governance structure, and has enacted, amended, and repealed local acts to: abolish the county board; set the number of trustees and their terms; and establish the method of electing trustees." *Id.* at 9 (internal citations omitted). Thus, Defendants argue "[t]he state's exclusive

control over the School District's governance structure greatly decreases its autonomy and also serves as another example of 'veto power' over the School District's affairs." *Id.*

This Court finds the magistrate properly agreed with the analysis in *Child Evangelism*, where the Court determined that "the District is an independent body which may sue and be sued, purchase liability insurance, and retain private counsel, as it has in this case, without permission of the South Carolina Attorney General." 438 F. Supp. 2d at 619 (citing *Cash*, 242 F.3d at 225; S.C. Code Ann. §§ 59-17-10, 1-11-140); ECF No. 25 at 19. The School District has the authority to enter into interlocal agreements and the power to deal with school property in the district, such as purchasing and holding real and personal property, constructing and repairing buildings, and declaring bankruptcy. S.C. Code Ann. §§ 6-1-10, 59-17-10, 59-17-90, 59-19-90(5), 59-19-180; *see Child Evangelism*, 438 F. Supp. 2d at 619. In addition, and as indicated above, the magistrate thoroughly examined the *Smith* court's analysis of the South Carolina statutes and regulations applicable to school districts and, following the court in *Child Evangelism*, concluded that "the multitude of regulations cited in *Smith* were more akin to curriculum or certification requirements to ensure base levels of performance and education across the State, which the Fourth Circuit in *Cash* found to be insufficient to warrant a conclusion of control and Eleventh Amendment immunity." ECF No. 25 at 18–19.

Moreover, the magistrate considered, for example, Defendant's arguments—virtually identical to the arguments Defendant now asserts to this Court—that "the state remains heavily involved in the finances and funding of the School District," that

the General Assembly "exercises even greater control over the School District's funding through Act 388 of 2006", that "the General Assembly also exerts precise and specific control over the operations and organizations of the School District through local legislation," and that "through local legislation, the General Assembly has a substantial impact on the School District's structure and governance," ECF No. 20 at 6–8, before concluding that the School District did not proffer a convincing argument regarding veto power.  This Court finds the magistrate correctly addressed the veto prong, and agrees that, despite South Carolina's veto power over some aspects of the School District's affairs, "such as requiring prior approval before the [School District] may buy or sell real property or begin construction," Defendant has not met the first prong of the control analysis.

With respect to the second *Ellerbe Becket* factor, Defendant argues that the magistrate "summarily conclude[d] this factor weighs against state control," despite the magistrate acknowledging "that half of [the School District's] funding comes from the state," and recognizing that the School District makes a "compelling argument that much of its budget is comprised of state funds through the Education Finance Act of 1977 and the Education Improvement Act of 1984." ECF No. 26 at 7–8 (citing ECF No. 25 at 14, 20).  A review of the record indicates that the School District receives funding from "state, local, and federal revenues." ECF No. 25 at 15.  The majority of the total state funding for the School District is placed into the School District's chief operating fund, known as the General Fund.  ECF No. 20-1; *see* ECF No. 25 at 14–15 (explaining what evidence a court can consider).  However, unlike *Child Evangelism* where it was "undisputed that the District receive[d] less than half of its

funding from the State" and "the State provide[d] only 2% more funding to the District than the District receive[d] locally," 438 F. Supp. 2d at 620, this Court cannot assess at this stage whether the School District receives more than, less than, or exactly half of its total funding from the State. See ECF No. 27 at 5 n.4 ("The School District argues that half of its operating fund is provided by State funds but fails to argue what portion of its total funds come from the State."). In addition, Defendant directs this Court to S.C. Act No. 610 of 1994, which provides that each of the seven boards of trustees of Spartanburg County shall have total fiscal autonomy. ECF No. 26 at 9. Therefore, this Court finds the magistrate correctly concluded that this second prong of the control analysis weighs against a finding of state control.

Finally, turning to the third prong of the control analysis, Defendant School District argues the magistrate "erroneously finds the school board is appointed by the county board of education and not the state." ECF No. 26 at 9 (citing S.C. Code Ann. § 59-19-40 ("The provisions of § 59-19-30 shall neither repeal, supersede nor annul any special act providing for the appointment or election of school trustees in any school district or in any of the several counties of the State.")). Specifically, Defendant asserts, as stated above, that "the General Assembly, through local legislation, exerts exacting control over the School District's governance structure" and that this exclusive State control "greatly decreases its autonomy." Id. On the contrary, Plaintiff argues it is "undisputed that the [School] District's board of trustees members are appointed locally by the county board of education, not by the State." ECF No. 27 at 5 (citing S.C. Code Ann. § 59-19-30 ("[T]he county boards of education shall . . . appoint one trustee for each district from the qualified electors and

taxpayers residing in the district . . . .")); *see Child Evangelism*, 438 F. Supp. 2d at 620; *see also* S.C. Code Ann. § 59-19-45(A) (recognizing membership on a school district board of trustees is either by appointment or election).

Defendant's local governance structure arguments were properly before the magistrate, and she correctly addressed this issue. *See* ECF No. 25 at 19. In fact, Defendant directs this Court to legislation confirming that Defendant School District's board of trustees members are locally elected. *See, e.g.,* S.C. Act No. 612 of 1984; S.C. Act No. 792 of 1988; S.C. Act No. 11 of 2009. Furthermore, South Carolina law provides that school districts are "under the management and control of the board of trustees," thus, any control is local, not state control. S.C. Code Ann. § 59-19-10. Additionally, in defending local school district control, Plaintiff argues that the "day-to-day operations [of the School District — such as bus transportation, purchasing equipment, leasing buildings, etc. —] are often left up to the school district officials, who are elected by the public." ECF Nos. 15 at 8 & 27 at 5; *see* S.C. Code Ann. §§ 59-19-90, 59-19-120, 59-19-130, 59-19-180, 59-19-260. Defendant School District's board of trustees is elected; the board is not appointed by state officials. Thus, this third *Ellerbe Becket* factor weighs against a finding of control by the State.

Accordingly, as to the extent of the state's control over the entity, the Court concludes that, after reviewing the three factors set forth in *Ellerbe Becket*, the School District retains sufficient autonomy such that it is distinct from the State of South Carolina and any judgment against it would not affront the dignity of the State. Therefore, this Court adopts the magistrate's ultimate finding on this issue.

### 3. School District's State-wide Reach

With respect to the third *Hoover* and *Cash* factor, whether the School District deals with local or statewide concerns, Defendant argues that by "rel[ying] primarily on *Cash*, which concerned the North Carolina school system," the magistrate "erroneously concluded the School District's concern is 'clearly local.'" ECF No. 26 at 12. Defendant's objection, however, is overruled. Plaintiff argues, and this Court agrees, that "school districts in South Carolina operate independently from one another because they have their own policies, elect their own boards [of trustees], and make a variety of decisions without consulting one another or the State." ECF No. 27 at 7. *See, e.g.,* S.C. Code Ann. §§ 59-19-10 (school districts are under the management and control of their respective board of trustees), 59-19-90 (school trustees have a duty to manage and control the local educational interests of *its* district). "[I]t can not be argued that Defendant [School District] [is] not primarily concerned with maintaining and improving the local education system." *Smith*, 324 F. Supp. 2d at 795; *see Child Evangelism*, 438 F. Supp. 2d at 620 (school districts deal with local, not statewide concerns). Therefore, the magistrate properly concluded that this factor weighs against a finding that the School District is immune.

### 4. School District's Treatment Under State Law

The magistrate correctly explained that the inquiry of the final *Hoover* and *Cash* factor, how the School District is treated under state law, overlaps with the control versus local autonomy analysis. ECF No. 25 at 20; *see Cash*, 242 F.3d at 226. Defendant's argument that the legislature has control over its governance structure has been previously addressed. Defendant also argues that the South

Carolina Supreme Court's holding in *Moye v. Caughman*, 217 S.E.2d 36 (S.C. 1975) that the Home Rule Act, S.C. Code Ann. § 5-7-10, *et seq.* (1976), did not apply to school districts "clearly put school districts in a different category than local governmental bodies." ECF No. 26 at 13–14 (citing *Smith*, 324 F. Supp. 2d at 795). In addition, Defendant argues it is an arm of the State because the School District employees have access to the State retirement system and are allowed to transfer sick leave from county to county. *Id.* at 14–15.

The *Moye* Court was not faced with the issues presented in this case and did not conduct the arm-of-the-state analysis. Moreover, the *Moye* Court took judicial notice that some school districts encompass more than one county and as a result it would be difficult for the county to make rules and decisions, 217 S.E.2d at 37–38; however this argument does not apply in this case as the Defendant School District at issue does not span multiple counties. ECF No. 27 at 8 n.7. This Court agrees with the *Moye* Court that the State has an interest in education, however the numerous examples listed above, such as the School District's ability to sue and be sued, make contracts, own property, carry liability insurance, and be represented by counsel, reveal that the magistrate properly found it compelling that South Carolina treats the School District as an autonomous entity.

Furthermore, as the magistrate correctly pointed out, South Carolina law regards school districts as a political subdivision, rather than as a state agency or instrumentality. *See* S.C. Code Ann. §§ 15-78-30(h) ("'Political subdivision' means the counties, municipalities, school districts, . . ."); 15-78-30(a) & (e) (omitting school districts from the definitions for "Agency" and "State"); ECF No. 25 at 21–22. In

addition, this Court has examined the statutes regarding the School District's employees having access to the State retirement system and their ability to transfer sick days, and finds Defendant's objections to be without merit as there are clear distinctions between employees of the State and school district employees. *See* S.C. Code Ann. §§ 1-11-710, 8-11-46, 9-1-10, 9-1-20. Thus, after considering all of the evidence, the Court finds that the School District failed to meet the final prong of the analysis and that the magistrate properly concluded this factor weighs in favor of a finding that the School District is not immune.

## Conclusion

After a review of the Magistrate Judge Austin's Report and Recommendation, this Court finds that the magistrate based her report upon the proper law and applied sound legal principles to the facts of this case. Accordingly, the magistrate's Report and Recommendation is ACCEPTED and ADOPTED in its entirety.

**IT IS THEREFORE ORDERED** that Defendants Kennedy and Andrews' Motion to Dismiss is DENIED.

**IT IS FURTHER ORDERED** that Defendant Spartanburg School District Seven's Motion to Dismiss is DENIED.

**IT IS SO ORDERED**.

G. Ross Anderson, Jr.
Senior United States District Judge

March  21 , 2014
Anderson, South Carolina